## ESTATE of JOHN GILL.

G., by a codicil in his will, gave his executors the sum of $3000 in trust, to be invested during the life of his niece; the income to be paid to her annually, provided, however, if his said niece should *marry*, then the same to be paid to any one she might name as her trustee, to be laid out, if she requested it, in furniture, in the name of her trustee, for her sole and separate use.  After the making of the codicil, the niece married, and G. purchased furniture for her to the amount of $2383.44, on her marriage, and charged her with this sum on his books: *Held*, that this was an ademption of the legacy *pro tanto* to the amount of the sum thus charged against her by the testator.

It is a general rule, where a father gives a legacy to his child, it must be understood as a portion, though it is not so described in the will; and afterwards advancing a portion to that child, though there may be slight circumstances of difference between the advancement and the portion in amount, yet the father will be intended to have the same purpose in each instance; therefore the advance is an ademption of the legacy.  Not so when a stranger gives a legacy; it is understood as giving a bounty.

This presumed ademption may be destroyed or confirmed by parol evidence, showing a different intention by the testator.

And the rule relative to a parent, equally applies when the testator has placed himself in *loco parentis* to the legatee.  Hence, where the testator's assumption of the office of parent is established, his legacy will be considered a portion, and a subsequent advancement will be an ademption in all cases where it would be so made by a natural parent.

The assumption by a person of the relation of a parent to the legatee may be proved by parol, and is not required to be collected from the face of the will itself.

The test in such cases seems to be, whether the circumstances taken in the aggregate amount to a moral certainty, that the testator considered himself in the place of the child's father, and as meaning to discharge those natural obligations which it was the duty of the parent to perform.

*May* 14.   THIS case arose in the Orphans' Court on exceptions to the report of an auditor.

It is believed all the facts material for a proper understanding of the points decided by the Court, are so fully stated in the opinion of the Judge, that no further statement of them is important.

The opinion of the Court was delivered by

KING, President.—The testator, John Gill, after various minor bequests, enumerated in his will, bequeathed the residue of his estate to be divided into five equal parts, among his nephews, Archibald Campbell and John Gill Campbell, and his nieces, Mrs. E. Gill Baker, Harriet Oakman, and Ann Matilda Campbell, now Mrs. Miller.   The particular form of these bequests being immaterial to the question before the Court, need not be referred to.   In his will the testator declares that "no loans or advances by him made to any of the children of his sister Mary Campbell, shall be charged

against them or deducted from or charged against the bequests and devises in their favour, unless, and only so far as charges therefor shall appear on his books, without any directions forbidding the collection of said loans or advances, and excepting however bonds and mortgages, which remain in full force." By a codicil to his will, dated June 4, 1842, he bequeathed to his executors $3000 in trust, to be invested during the life of Ann Matilda Campbell; the income to be paid to her, &c., provided, however, that if his said niece should marry, then the $3000 are to be paid to any one she may name as her trustee, to be laid out, if she requests it, in furniture, in the name of the trustee, for her sole and separate use." On his books, prior to the date of his will, appear various charges against his nephews and nieces. Against Eliz. G. Baker in 1832, $4000 for furniture; against Harriet Oakman, $3000 furniture and cash. And after the date of the codicil, against Ann Matilda Miller $2383.44, which appears to have been laid out by him for furniture on her marriage. The evidence is that his intention was to have given Mrs. Miller furniture to the amount of $3000, but he was prevented from the size of her house, which did not require more than the sum of $2383.44 to furnish it. The full amount of $3000 was to be made up to her on removing to a more capacious mansion. The testimony shows the testator to have put himself in the place of a parent to his nephews and nieces, having declared his intention to do so on the occasion of the death of their father. And his engagement was most faithfully kept, he having acted towards his orphan relatives with the kindest of paternal care.

Two questions have arisen out of the bequest of $3000 to Mrs. Miller, which, it is to be remembered, is in addition to her equal fifth part with her brothers and sisters. The first is, whether the purchase of furniture by the testator after the date of the codicil, and after her marriage, was an ademption *pro tanto* of the legacy of $3000. And the second, whether the sum charged in his books against her of $2383.44, the purchase-money of this furniture, is to be charged against her in like manner as the sums standing on his books to the debit of his other nephews and nieces, children of his sister Mary Campbell.

The whole scheme of his will shows the clearest intention of making an equal distribution of the residue of his property between these special objects of his bounty, and any construction of it not producing the result, would most certainly be against his general intention. But I think there is no difficulty in considering the

special legacy to Mrs. Miller adeemed by the subsequent purchase and delivery to her of the furniture, to the extent of that purchase. The cases on this subject are clear.

In Ex parte Page, 18 Vesey, 135, Lord Eldon observes, "that, where a father gives a legacy to a child, the legacy coming from a father to his child must be understood as a portion, though it is not so described in the will; and afterwards advancing a portion to that child, though there may be slight circumstances of difference between the advance and the portion, and a difference in amount, yet the father will be intended to have the same purpose in each instance, *and the advance is therefore an ademption of the legacy;* but a stranger giving a legacy is understood as giving a bounty, not as paying a debt; he must, therefore, be proved to mean it as a portion or provision either on the face of the will, or, if it may be, and it seems it may, *by evidence,* applying directly to the gift proposed by the will."(a) The presumed ademption may be destroyed or confirmed by the application of parol evidence of a different intention by the testator: Biggleston *v.* Grubb, 2 Atk. 48; Ronnell *v.* Barnett, 3 Atk. 77; Trimmer *v.* Bayne, 7 Ves. 508; Robinson *v.* Whitely, 9 Ves. 577; Thilluson *v.* Woodford, 4 Madd. 420. This doctrine equally applies where the testator has placed himself in *loco parentis* to the legatee. Where the testator's assumption of the office of a parent is established, his legacy will be considered a portion, and a subsequent advancement will be an ademption in all cases where it would be so if made by a natural father.

In the extensive class of cases on this doctrine to be found in the Equity Reports, the chief difficulty in its application seems to have arisen from the inquiry, what are circumstances sufficient to invest the testator with the assumed relation of parent to the legatee; and the evidence competent to prove that he placed himself in such character? Roper declares the test in such cases to be, whether the circumstances taken in the aggregate amount to moral certainty, that a testator considered himself in the place of the child's father, and as meaning to discharge that natural obligation, which it was the duty of a parent to perform.

The assumption by a person of the relation of a parent to the legatee may be proved by parol, and is not required to be collected from the face of the will itself. The facts existing in this case, clearly show that the testator placed himself in that relation to the children

(a) See Elkenhead's Case, 2 Vernon, 257; Ward *v.* Lont, Prec. in Chanc. 182; Watson *v.* Lord Lincoln, Amb. 325.

of his sister, Mary Campbell. On the clearest principles, therefore, the advance for furniture to Mrs. Miller must be regarded as an ademption of her legacy of $3000, to the extent of such advance. The legacy was given chiefly to purchase for her, on her marriage, household furniture; and the money advanced was used for that purpose. So far I agree with the auditor. But, in stating the amount, he has credited Mrs. Miller with the legacy of $3000, and debited her with the furniture, the result is that her portion exceeds that of her brothers and sisters $3000; who, while they are charged with advances made to them, have no such special bequest given. Their advances come from the respective fifth parts of the general residue, while that of Mrs. Miller remains intact, being taken from the special legacy given to her by the codicil of June, 1842, for the purchase of furniture on her marriage. The ademption of a legacy is, more properly speaking, its extinguishment: see Blackstone *v.* Blackstone, 3 Watts, 337; and if, as has been shown, the advance made to her for the purchase of furniture operates as such ademption, it as effectually extinguishes the legacy to the extent of such purchase, as if it had been ever so formally cancelled and revoked. Instead, therefore, of considering Mrs. Miller as a special legatee of $3000, in addition to her bequest of one-fifth of the residue, the auditor should have stated her amount on the basis of her being a special legatee to the extent of the difference between the sum of $2383.44, the amount of the portion advanced to her for the purchase of furniture, and the $3000 bequeathed to her for the like object. This works perfect equality among the adopted children of the testator; an object he had manifestly at heart. She then stands like her sisters, who had advances made them for similar purposes. *They* are charged with such advances, and so will she be. That this was the intention of the testator, is not only clear from the clause in his will which directs all loans and advances made to the children of his sister, Mary Campbell, appearing in his books, to be charged against them; but from the fact, that the entry against Mrs. Miller is actually made after the date of the codicil, giving her the special legacy of $3000 for furniture after her marriage.

The radical error of the auditor consists in his having given Mrs. Miller credit, in settling the account of the legatees of John Gill, for a bequest which had no existence, and which was *extinguished*: this being the true idea conveyed by the technical phrase adeemed: Blackstone *v.* Blackstone, supra. If John Gill, when he purchased the furniture for Mrs. Miller, had, besides charging the sum expended

for it against her, by a codicil declared his previous bequest of $3000 revoked to the extent of his purchase, could this cancelled legacy be credited to her? Now, the effect of the advance made by him is equivalent to such a formal revocation, and Mrs. Miller stands subject to the general direction of the will, which makes her chargeable with advances made to her, appearing on the testator's books.

> The report is set aside to this extent, and the account is ordered to be referred to the auditor, to restate it according to the principles of this decree.

Mr. *F. W. Hubbell*, for exceptants.

Mr. *B. Gerhard*, for executor.